The G and R Corporation v. Commissioner.
The G v. Commissioner
Docket No. 21226.
United States Tax Court
1949 Tax Ct. Memo LEXIS 41; 8 T.C.M. (CCH) 970; T.C.M. (RIA) 49263; October 28, 1949
Henry G. Burke, Esq., 1016 Munsey Bldg., Baltimore 2, Md., and Stanley H. Wilen, Esq., for the petitioner. Sanford N. Stoddard, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The respondent determined a deficiency of $984.36 in income tax and a deficiency of $2,405.20 in excess profits tax for the taxable year of the petitioner ending July 31, 1945. The issues presented for our determination are: 1. In computing its taxable income for the taxable year ended July 31, 1945, is the petitioner entitled to a deduction from gross income, as an "ordinary and necessary" expense of carrying on its business, of the sum expended during such taxable year in replacing the old floors in twenty-one apartments of its apartment building with new *42 floors? 2. Is the petitioner entitled to deduct as a charitable contribution for the year ended July 31, 1945, the sum of $1,500 paid by it to the United Jewish Appeal during the month of November, 1944? Two other adjustments made by the respondent in determining the deficiencies are not contested by the petitioner. Findings of Fact The petitioner is a corporation duly organized and existing under the laws of the state of Delaware. It was organized during the month of July, 1936, at which time it purchased the building located at 18th and G. Streets, N.W., Washington, D.C., known as the "McReynolds Building". The only activity of the petitioner is the ownership and operation of this building, which is an eleven-story structure of steel and concrete construction containing eight stores on the ground floor and 240 apartments on the upper floors. The building was erected about 1928. The building was managed by the petitioner's agents, The Randall-Hagnor Company, who collected the rents, kept records, supervised all repairs and redecorations, made all collections, and handled all disbursements on behalf of the petitioner. Petitioner had confidence in the discretion of its agents *43 and there was an understanding between it and its agents that they could exercise their own discretion with reference to expenditures for comparatively small repairs, and that petitioner would be consulted when larger expenditures were involved. During the year ended July 31, 1945, the petitioner, or its agents, received a number of complaints from the tenants that certain of the pine floors in the building were in very poor condition; that there were creaks and groans in the floors; and, in some instances, the floor boards were loose, warped, splintered or dented. The petitioner and its agents, The Randall-Hagner Company, decided that some action had to be taken. The old pine floors could not be sanded, cleaned, or refinished as they had been worn down and the grain had lifted because of previous washings or cleanings. Petitioner considered removal of the old floors, and this was tried in one instance and it was found that the sleepers under the floors had loosened from the concrete in which they were imbedded and that it required considerable work to tighten these sleepers by wedging them and then laying the new floors on the sleepers. After this experience the method of laying *44 new oak floors on the old pine floors was adopted. The bathrooms in the apartments had tile floors and the kitchen floors were covered with linoleum, and it was not necessary to replace them during the taxable year. During the taxable year ended July 31, 1945, 30 oak floors were laid over the old pine floors in 21 of the 240 apartments in the building at a cost to the petitioner of $2,838. During the taxable year here involved, the stock of petitioner was owned 45 per cent by Morris Rodman, 45 per cent by Simon Gerber, and the wives of these two men each owned 5 per cent. Simon Gerber was President, and Morris Rodman was Secretary-Treasurer. The United Jewish Appeal conducts a fund-raising campaign each year, and did so during the year 1944. In the latter part of that year Morris Rodman and Simon Gerber each signed a pledge card which stated that "In consideration of the pledges of others and the obligations incurred based upon pledges I hereby promise to pay to the UNITED JEWISH APPEAL the amount indicated on this card", and in the space provided for the amount pledged each of these men inserted $750. Although no notation appeared on the pledge cards that they were making the *45 pledges other than as individuals, when they executed the pledges they had a definite understanding that the contribution was to be made by petitioner and that they signed on behalf of the petitioner. The United Jewish Appeal sent bills for the amounts pledged to Morris Rodman and Simon Gerber, and they in turn sent the bills of The Randall-Hagner Company, the managing agent of petitioner, with instructions that they be paid by petitioner in the same manner as all of its other bills. During the month of November 1944, the sum of $1,500 was paid by The Randall-Hagner Company for the petitioner out of its funds, and the disbursement was charged on the books of original entry and the general ledger of the petitioner to "Donations". The United Jewish Appeal is a charitable organization, contributions to which are deductible from taxable income by corporations under the provisions of section 23 (q) (2), I.R.C.
In its income tax returns for its fiscal year ended July 31, 1945, the petitioner in computing its net income deducted for cost of new floors the sum of $2,838 and for contributions the sum of $1,500. These deductions were disallowed by the respondent. *46 Opinion The first question is whether the amount expended by petitioner to place new oak floors over old pine floors in its building is a deductible ordinary and necessary business expense; or is a non-deductible capital expenditure. On brief the petitioner argues that the expenditure was made for "incidental repairs", within the meaning of section 29.23 (a)-4 of Regulations 111, [1] and that the installations were not "Repairs in the nature of replacements" which would have to be treated as capital expenditures under that section. He also cites a number of cases in which the courts have defined "capital expenditures" and "repairs" and urges that the expenditures in controversy fall within the definitions of "repairs". *47 In order to be entitled to an expense deduction under the provisions of this regulation, it must appear that the expenditure was made for the "repair" of the property. In an early case this tribunal said that "To repair is to restore to a sound state or to mend, while a replacement connotes a substitution". Illinois Merchants Trust Company, Executor, 4 B.T.A. 103. Repairs to wooden floors include mending, replacement of loose or damaged boards, planing, sanding, polishing and like work performed on the old floor surface. They do not include the complete replacement of old pine floors by new oak floors. Moreover, the fact that the old floors were not removed but were used as supports for the new does not justify a conclusion that the work consisted merely of repairing the old floors. The function of the old floors as floors ceased completely when they were covered from wall to wall by the new floors. The installation of the new floors resulted in a direct business advantage, the effect of which will be felt by petitioner in future years. They "rendered the building better suited to the purpose for which it was used". Black Hardware Company, 16 B.T.A. 551, *48 aff'd 39 Fed. (2d) 460, cert. denied 282 U.S. 841. They were in the nature of permanent improvements or betterments [2] rather than recurrent repair or upkeep, and, even if it be assumed, as petitioner urges, that increase in value of the property must result therefrom in order to classify an expenditure a capital expenditure, petitioner has not proved to our satisfaction that it did not result in an increase in value. We think it is quite obvious that a prospective purchaser would pay more for the building immediately after thirty new oak floors had been installed than he would pay immediately before such new installations were made. Our conclusion on this issue is that the respondent correctly determined that the installations of thirty new floors in petitioner's building did not constitute repairs and his action in disallowing the deduction of the amount expended therefor as an ordinary and necessary business expense is approved. Joseph Hubinger, 13 B.T.A. 960, 964, aff'd 36 Fed. (2d) 724, cert. denied 218 U.S. 741; Difco Laboratories, Inc., 10 T.C. 660. *49 The remaining question relates to the contribution of $1,500 to the United Jewish Appeal during the month of November, 1944. In support of his disallowance of petitioner's deduction of this amount, the respondent stresses the fact that Rodman and Gerber, the two principal stockholders of petitioner, executed the pledge cards, and urges that all the petitioner did was to pay the previously incurred individual and several obligations of its stockholders. The evidence discloses, however, that at the time the pledge cards were executed Rodman and Gerber had agreed that petitioner was to contribute the $1,500 and that they were acting in its behalf in signing the cards. When the bills were received they were forwarded to the managing agent of the petitioner, the $1,500 was paid from corporate funds, and the payment was charged on the books of original entry and general ledger of petitioner to "Donations". The above procedure impresses us as bringing the donations by the corporation within the provisions of section 23 (q), I.R.C., authorizing the deduction of such payments from corporate taxable income. The requirement of such section is only that the payment of *50 contributions or gifts be made by the corporation within the taxable year. There is no requirement that the agent of the corporation sign a pledge card prior to such payment. In this case the pledge cards were signed by the owners of 90 per cent of the corporate stock. The Commissioner contends that the testimony of the signers that in so doing they were acting as agents of the corporation should be rejected as self serving ( Dupont et al. v. Commissioner, 118 Fed. (2d) 544. Nevertheless the subsequent and actual payment of the pledge by the corporation, even if not originally authorized, would be a ratification by the corporation of the commitments of the corporate agent. Under the circumstances our conclusion is that this contribution of $1,500 was made by petitioner in its own behalf and that the respondent erred in disallowing the deduction of this amount by petitioner in its return for the taxable year. This issue is, therefore, decided in favor of the petitioner. Decision will be entered under Rule 50. Footnotes
1. Section 29.23(a)-4 of Regulations 111 read as follows: REPAIRS. - The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition, may be deducted as expense, provided the plant or property account is not increased by the amount of such expenditures. Repairs in the nature of replacements, to the extent that they arrest deterioration and appreciably prolong the life of the property, should be charged against the depreciation reserve if such account is kept.↩
2. SEC. 24. ITEMS NOT DEDUCTIBLE. (a) General Rule. - In computing net income no deduction shall in any case be allowed in respect of - * * *
(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate; (3) Any amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made.↩